IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EMMITT BICKFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-CV-97-TCK-JFJ |
| | ) | |
| RYAN HENSLEY, | ) | |
| in his Individual Capacity; and | ) | |
| OSAGE COUNTY SHERIFF, | ) | |
| in his Official Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Before the Court are (1) Defendant Osage County Sheriff's Motion for Summary Judgment (Doc. 22), (2) Defendant Ryan Hensley's Motion for Summary Judgment (Doc. 24) and (3) Plaintiff's Opposed Motion to Supplement Evidentiary Material (Doc. 46). For reasons discussed below, Defendant Osage County Sheriff's and Defendant Ryan Hensley's Motions for Summary Judgment are **GRANTED**. Plaintiff's Opposed Motion to Supplement Evidentiary Material is **DENIED**.

**I.      Factual Background**

Defendants argue that in 2014 and 2015, Osage County law enforcement noticed an increased amount of high-grade marijuana being shipped and distributed into Osage County, particularly Pawhuska, Oklahoma. (Doc. 22, pg. 9; Doc. 24, pg. 6; Doc. 25-2, pg. 6.) The Osage County Sheriff's Office launched an investigation, in which Defendant Deputy Ryan Hensley took part. (Doc. 22, pg. 9, pg. 24, pg. 6.) As part of this investigation Defendant Hensley identified Jache Willard, a former resident of Pawhuska who now lived in California, as the supplier. Willard also supplied marijuana to Dusty Hendren. (Doc. 24, pg. 7.) It is undisputed that, during the course of his investigation, Defendant Hensley reviewed a Facebook Messenger conversation

1

between Willard and Hendren. That conversation included, in pertinent part, the following exchange:

> **HENDREN**: Gave Chaz a small dab the other night n he got so high he went into ninja paranoid mode
> **WILLARD**: Lol next batch will be better to promise lol
> **HENDREN**: He done said he ain't fucking with that shit he more of a pinch hitter now
> **WILLARD**: Lol Chats great

(Doc. 22-5, pg. 5.)

Defendant Hensley appears to concede that this conversation was the only evidence he had that supported probable cause to arrest Plaintiff Emmitt Bickford, colloquially known as Chaz. (Doc. 1, pg. 10; Doc. 24, pg. 16.) Based on this conversation, Defendant Hensley believed that Plaintiff had engaged in an overt act in furtherance of the conspiracy and therefore became a co-conspirator, subject to the full extent of conspiracy liability. (Doc. 25-2, pg. 8.) Accordingly, Defendant Hensley prepared a "generalized affidavit"—the same affidavit used to support probable cause for arrest warrants for all members of the conspiracy—naming Plaintiff as the defendant. (Doc. 25-2, pg. 12, 20.) Defendant Hensley submitted the affidavit for review, first to the Chief Criminal Deputy, and then to District Attorney Rex Duncan. (Doc. 22, pg. 11; Doc. 22-4, pg. 2; Doc. 25-2, pg. 12.)

On March 22, 2016, either Defendant Hensley or District Attorney Rex Duncan then used this affidavit to seek an arrest warrant for Plaintiff. (Doc. 22, pg. 11; Doc. 22-4, pg. 2; Doc. 22-6, Doc. 25-2, pg. 12.) The affidavit listed the following as the Offense(s) Committed/Anticipated Charge(s):

> 1. 63 O.S. § 2-408: Any person offers, solicits, attempts, endeavors or Conspires (sic) to commit any offense under

2

          Uniform Controlled Dangerous Substance Act (63 O.S. § 2-101 et. seq.)[1]

2.     21 O.S. § 1958: Communicates with, stores data in, or retrieve (sic) data from a computer system for the purpose of violating provisions of the Oklahoma Statutes.

The affidavit also listed the facts and circumstances that support probable cause as follows:

1. Over the last year, your affiant has been investigating a marijuana distribution network operated by a distributor named Jache Willard. Jache Willard has possessed at least one hundred pounds of marijuana on one occasion during this investigation. Jache Willard often times uses Facebook Messenger to communicate with drug dealers selling marijuana for him to facilitate drug transactions. Jache Willard often times discusses different strains of marijuana for sale, marijuana prices, and shipping details with Facebook Messenger.

2. During the course of this investigation your affiant has identified lower level dealers, distributors, and users associated with this organization and the details are as follows.

3. Jache Willard has lived in both California and Las Vegas, Nevada, and regularly mails marijuana through the United States Post Office to marijuana dealers in Oklahoma and Arkansas.

4. Jache Willard often times "fronts" marijuana, meaning sends marijuana without prior payment. Willard mails marijuana in the form of ounce packages up to multiple pound packages to drug dealers within this conspiracy, and then receives payment for the marijuana electronically through Money Gram, Western Union, and Arvest Bank.

5. The above named defendant assisted this conspiracy by using a computer and/or a cell phone to facilitate marijuana transactions in at least one or more of the following ways: Facebook Messenger, text messaging, or voice calls.

6. Evidence suggests the above named defendant conspired with Jache Willard, and/or other co-conspirators in the

---

[1] Though the text of the statute refers to many types of criminal liability, the substance of the affidavit indicates that this was a conspiracy charge.

3

> distribution network, to purchase high grade marijuana shipped from California or Las Vegas, Nevada.
>
> 7. The above named defendant also supplied money as payment to for (sic) the marijuana to directly to (sic) Jache Willard, or another co-conspirator in the distribution network, which allowed the distribution network to stay operational.
>
> 8. The above named defendant committed one or more of the following overt acts which includes purchasing marijuana, transporting marijuana, receiving marijuana through USPS mail, electronically transferring drug money, using a computer to send messages to arrange marijuana transactions, opening bank accounts allowing money to be covertly transferred, or distributing marijuana.
>
> 9. One or more of the overt acts within this conspiracy took place within the jurisdictional boundaries of Osage County, OK.

(Doc. 22-6.)

Also on March 22, 2016, the District Attorney filed charges in Osage County against Plaintiff and 43 other individuals as part of a conspiracy to sell the marijuana. *See* Osage County Case No. CF-2016-107. On June 14, 2017, charges against Plaintiff were dismissed without prejudice and costs "as it is in the best interest of justice." *See* Osage County Case No. CF-2016-107C.[2]

Plaintiff filed the instant case on February 21, 2018. (Doc. 1.) In it, he alleges violations of his Fourth Amendment rights under 42 U.S.C. § 1983 and a malicious prosecution claim under

---

[2] This case is styled as *State of Oklahoma v. Amanda Dawn Bickford*, but the text of the docket indicates that both Amanda Dawn Bickford and Plaintiff Emmitt Bickford were named and represented in the suit. Because the state court docket is relevant to the disposition of Plaintiff's malicious prosecution claim, the Court will take judicial notice of the docket. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (federal courts may take notice of proceedings in other courts, both within and without the federal judicial system).

42 U.S.C. § 1983 against both Defendant Hensley in his individual capacity and the Osage County Sheriff in his official capacity.

II. **Plaintiff's Opposed Motion for Leave of Court to File Supplemental Evidence in Opposition to Defendants' Summary Judgment Motion (Doc. 46)**

Plaintiff filed a motion requesting the following relief on August 30, 2019:

1. That Plaintiff be allowed to file a supplemental pleading including the Motion to Suppress, Response to Motion to Suppress, transcript of hearing on the Motion to Suppress, and the Opinion and Order granting the Motion to Suppress in *United States v. Grantham*, 18-cr-131-CVE.[3]

2. That Defendants are ordered to supplement all of their discovery responses including any other, similar matters.

3. That Plaintiff is allowed to supplement any previously disclosed witness and exhibit lists to include witnesses and evidence discovered in the supplemental discovery responses.

4. That Plaintiff be allowed a five-page sur-reply to each of Defendants' Motions for Summary Judgment, unless allowing a sur-reply would require extending the deadlines in the current scheduling order.

Because the documents requested in Plaintiff's first request are publicly filed documents in the Northern District of Oklahoma, the Court will take judicial notice of these documents, *see*, *supra*, n.2, and will consider the documents as appropriate in evaluating Plaintiff's 42 U.S.C. § 1983 claims of Fourth Amendment violations against the Osage County Sheriff. Accordingly, Plaintiff's motion is **DENIED AS MOOT** as to request 1.

---

[3] Plaintiff describes the documents he seeks to include as motions, transcripts, and orders regarding a motion for summary judgment, but as no motion for summary judgment was filed in 18-cv-131-CVE, the Court construes this as a request to include the briefing, argument, and order granting the motion to suppress.

Plaintiff has requested that Defendants' be ordered to supplement all of their discovery responses. However, discovery in this matter closed on April 1, 2019, five full months prior to Plaintiff's motion. When considering whether to reopen discovery, the Court should consider the following factors: (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence. *See Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987). The decision of whether to reopen discovery is committed to the discretion of the trial court. *Id.* Plaintiff has not identified this test, nor has he meaningfully addressed any elements of the test.

Due to Plaintiff's lack of meaningful support for this motion, as well as the procedural history of the case, the Court finds that Plaintiff's request to reopen discovery should be **DENIED**. Trial is imminent and Plaintiff's motion is opposed. The parties had ample time for discovery—eleven months, including a two-month extension (Docs. 12, 18)—and were aware that they could request further extensions if necessary and with good cause. Plaintiff has not alleged any facts regarding the likelihood of additional discovery leading to relevant evidence or whether Defendants would be prejudiced by reopening discovery.[4]

Moreover, though Plaintiff alleged his own diligence in locating cases similar to *United States v. Grantham* to support his 42 U.S.C. § 1983 claims of Fourth Amendment violations against the Osage County Sheriff, he argues that his efforts have been frustrated due to, *inter alia*,

---

[4] Plaintiff appears to argue that any prejudice to Defendants exists only because of Defendant Hensley's unlawful actions (Doc. 46, pg. 10), which misunderstands the prejudice inquiry. Plaintiff must address whether the non-moving party would be prejudiced by reopening discovery, not by any evidence that is beneficial to Plaintiff and produced during discovery.

"Defendants refusal to disclose any information about these matters." (Doc. 46, pg. 9.) Despite this, Plaintiff filed no motions to compel production throughout the eleven months of discovery in this case. Accordingly, none of the relevant factors support reopening discovery and the Court exercises its discretion to deny Plaintiff's request. Further, because Plaintiff's third request sought to supplement exhibit and witness lists with information from the reopened discovery, Plaintiff's third request is **DENIED AS MOOT.**

Finally, Plaintiff filed this motion on August 30, 2019, several months after the briefing on Defendants' Motions for Summary Judgment was completed and less than a month before the Pretrial Conference. Any additional briefing regarding Defendants' Motions for Summary Judgment would require extending the current scheduling order. Accordingly, Plaintiff's motion is **DENIED AS MOOT** as to request number four.

### III. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). In its summary judgment analysis, the Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A movant that "will not bear the burden of persuasion at trial need not negate the nonmovant's claim," but may "simply . . . point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal citations omitted). If the movant makes this prima

facie showing, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citing FED. R. CIV. P. 56(e)). To meet this burden, the nonmovant must set forth facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)). "In response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (internal citations omitted).

## IV. Fourth Amendment

### A. Defendant Hensley

Plaintiff alleges that Defendant Hensley has violated his Fourth Amendment rights because the arrest warrant supporting Plaintiff's arrest was not supported by probable cause. Defendant Hensley argues that Plaintiff's arrest warrant was supported by probable cause, and that he is entitled to qualified immunity.

#### 1. Probable Cause

The Fourth Amendment protects the "right of the people to be secure . . . against unreasonable searches and seizures." An arrest is an unreasonable seizure if the arresting officer acted in the absence of probable cause that a person had committed a crime. The arresting officer lacked probable cause if the officer seeking an arrest warrant either includes false statements in the affidavit, or omits material information from the affidavit "knowingly, or with reckless disregard for the truth." *See Morales v. Herrera*, No. 17-2186, 2019 U.S. App. LEXIS 25311, *5-

8

8 (10th Cir. 2019). However, an arrest warrant is supported by probable cause when it demonstrates a substantial probability that a crime has been committed, and that a specific individual committed the crime. *See Taylor v. Meachum*, 82 F.2d 1556, 1562 (10th Cir. 1996). Probable cause requires only a "fair probability" of illegal conduct—not "proof that something is more likely true than false. It is "a fluid concept," measured by "the totality of the circumstances." *Morales*, 2019 U.S. LEXIS 25311, *5-8.

To find that the false statements were included with reckless disregard for the truth, there must exist evidence that the officer in fact entertained serious doubts as to the truth of his allegations. A factfinder may infer such reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations. *See Stonecipher v. Valles*, 759 F.3d 1134, 1141-42 (10th Cir. 2014). In this case, it is undisputed that Defendant Hensley had only a brief Facebook Messenger conversation between two other people to support probable cause to arrest Plaintiff, and that this conversation did not suggest that Plaintiff had ever used Facebook Messenger, text messaging, or voice calls to facilitate marijuana transactions or that Plaintiff conspired with anyone to purchase high-grade marijuana shipped from California or Las Vegas, Nevada. Accordingly, there appears no reason for Defendant Hensley to have believed statements 5 or 6 in his affidavit to be accurate as to Plaintiff. Moreover, Defendant Hensley has presented no such reason in his arguments, aside from vague allusions to his career experience and investigations into other alleged conspirators that, apparently, produced no additional evidence against Plaintiff. The nature, volume, and content of the evidence against Plaintiff evince sufficient reasons to doubt the veracity of statements 5 and 6, and the Court infers that the statements were included with reckless disregard for the truth.

Defendant Hensley's contention that he believed that Plaintiff accepting a dab from Hendren was an overt act in furtherance of the conspiracy, subjecting him to the full extent of

9

conspiracy liability, does not excuse statements 5 and 6.  Nothing in the Facebook Messenger conversation gave Defendant Hensley a reason to believe that there was a substantial probability that Plaintiff had entered into an agreement to distribute marijuana.  Further, Plaintiff accepting or purchasing drugs from someone in the conspiracy without planning to or actually redistributing them does not further the objective of the conspiracy, the distribution of drugs for profit.  Accordingly, it is insufficient to support a conspiracy charge.  *Cf. United States v. Biglow*, 554 F. App'x 679, 682 (10th Cir. 2014) (a casual buyer-seller relationship does not further the objective of the conspiracy and is insufficient to support a conspiracy conviction).  Additionally, the Tenth Circuit does not excuse a police officer's reasonable mistake of law in a Fourth Amendment context—an officer's mistaken understanding of the applicable law negates the legitimacy of a probable cause determination.  *See United States v. Nicholson*, 721 F.3d 1236, 1241-24 (10th Cir. 2013).  Accordingly, Defendant Hensley's mistake of law does not allow statements 5 and 6 to be included in the determination of probable cause.

Further, the fact that Defendant Hensley used the same affidavit that was used in support of every arrest warrant for all members of the conspiracy does not move statements 5 and 6 into the realm of excusable negligence.  An arrest warrant must establish probable cause that the defendant named in the warrant committed a crime.  *See Taylor v. Meachum*, 82 F.2d 1556, 1562 (10th Cir. 1996).  Without an affidavit that identifies facts specific to Plaintiff, a magistrate will not be able to accurately determine whether there is a substantial probability that a crime has been committed, and that the defendant committed the crime.  Accordingly, a police officer using the same affidavit in support of every arrest warrant sought in a case is itself an obvious reason to doubt the veracity of the allegations as to a specific defendant, and does not move statements into the realm of excusable negligence.

However, because the Facebook Messenger conversation suggests that Plaintiff had used marijuana on one occasion and planned, based on past experience, to return to using marijuana in a different form on future occasions, Defendant Hensley had reason to believe that Plaintiff supplied money to Willard or another co-conspirator to purchase marijuana for personal use. Accordingly, statements 7 and 8 were not included in Defendant Hensley's affidavit with reckless disregard for the truth.

In cases where an arrest warrant affidavit includes false statements, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit. *See Pierce v. Gilchrist*, 359 F.2d 1279, 1293 (10th Cir. 2004). In this case, in addition to general statements of a conspiracy to distribute marijuana from California and Nevada in Oklahoma and Arkansas, the affidavit states that Plaintiff purchased marijuana from someone in this conspiracy. These statements are insufficient to establish probable cause. First, the affidavit does not state any facts indicating that Plaintiff communicated with, stored data in, or retrieved data from a computer system at all, let alone in a manner that created a substantial probability that he violated OKLA. STAT. tit. 21 sec. 1958. Moreover, the affidavit does not state any facts indicating that Plaintiff entered into an agreement with any other party to distribute marijuana sufficient to establish a substantial probability that he violated OKLA. STAT. tit. 63 sec. 2-408. In Oklahoma, conspiracy liability requires, at a minimum, an agreement to commit the crimes and an overt act in furtherance of the conspiracy. *See McGee v. State*, 2005 OK CR 30, 127 P.3d 1147, 1149 (Okla. Crim. App. 2005). As described *supra*, nothing in the Facebook Messenger conversation gave Defendant Hensley a reason to believe that there was a substantial probability that Plaintiff entered into an agreement to distribute marijuana, and simply accepting or purchasing marijuana from someone in a conspiracy does not further the objective of the conspiracy, the distribution of drugs for profit. Accordingly, when the statements included with

reckless disregard for the truth are set aside, Defendant Hensley's affidavit does not establish probable cause that Plaintiff committed the offenses listed in the affidavit, and Plaintiff has shown that Defendant Hensley violated his Fourth Amendment rights.

### 2. Qualified Immunity

Under 42 U.S.C. § 1983 (§ 1983), a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . ." *Knopf v. Williams*, 884 F.3d 939, 943 (10th Cir. 2018). The statute is not itself a source of substantive rights, but a method for vindicating federal rights conferred elsewhere. *See Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017). False arrest claims arise under the Fourth Amendment where, as in this case, they challenge conduct that occurred before the institution of legal process. *See Smith v. Plati*, 258 F.3d 1167, 1175 (10th Cir. 2001).

Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. *See Knopf*, 884 F.3d at 944. In resolving questions of § 1983 qualified immunity at the summary judgment stage, courts engage in a two-pronged inquiry. The first prong looks to whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right. *See Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014). The second prong looks to whether the federal right was clearly established at the time of the violation. *Id.* at 656 (internal citations omitted). However, Courts have discretion to decide the order in which to engage these two prongs. *Id.* Once a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to meet the "heavy two-part burden." *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). However, the general summary judgment standards

remain in effect, and the Court must still construe the evidence and draw reasonable inferences in favor of the non-moving party. *See Tolan*, 572 U.S. at 656-60.

### a. First Prong: Violation of a Federal Right

Because Plaintiff has shown that Defendant Hensley violated his Fourth Amendment rights, he has satisfied the first prong of his qualified immunity burden.

### b. Second Prong: Clearly Established

In addition to his argument that the Facebook Messenger conversation itself constitutes probable cause to support an arrest warrant for Plaintiff for the offenses listed in the affidavit, Defendant Hensley also contends that, regardless, he had probable cause to arrest Plaintiff for other crimes, including knowingly or intentionally possessing marijuana. A warrantless arrest is constitutional where the officer has probable cause to believe that a criminal offense has been or is being committed. *See Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004). Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest, even if the crime for which the officer had probable cause to arrest was not the crime for which the officer actually arrested the alleged offender. *Id.* At the time Plaintiff was arrested, it was unlawful for any person to knowingly or intentionally possess marijuana. *See* OKLA. STAT. tit. 63 sec. 2-402(B)(2). The Facebook Messenger conversation, known to Defendant Hensley at the time he arrested Plaintiff, presents a substantial possibility that Plaintiff had knowingly or intentionally possessed marijuana. Accordingly, Defendant Hensley did have probable cause to arrest Plaintiff for knowingly or intentionally possessing marijuana.

To the extent that Defendant Hensley argues that he had probable cause to arrest Plaintiff for attempt to possess marijuana, which, like conspiracy, is addressed in OKLA. STAT. tit. 63 sec. 2-408, this argument is unavailing, as in this case, the offense of knowingly or intentionally possessing marijuana is not distinct from the offense of attempting to knowingly or intentionally

possess marijuana. "Offenses are distinct and separate if they are not mere means to some other ultimate objective, are not offenses included in some other offense, or are not merely different incidents or facets of some primary offense. If the elements of proof are different for each offense, then individual crimes occurred." *Ashinsky v. State*, 1989 OK CR 59, 780 P.2d 201, 208 (Okla. Crim. App. 1989) (internal citations omitted); *Hunnicutt v. State*, 1988 OK CR 91, 755 P.2d 105, 110 (Okla. Crim. App. 1988). In this case, the offense of attempt is included in the offense of knowingly or intentionally possessing marijuana, as Plaintiff could not have knowingly or intentionally possessed marijuana without first attempting to possess it. The two offenses are a unit, and Defendant Hensley may not carve out a single offense in an attempt to demonstrate that his affidavit in support of an arrest warrant was supported by probable cause.

However, the Tenth Circuit has not provided a clear answer as to whether, when an officer knowingly, or with reckless disregard for the truth, included false statements in the affidavit submitted to the magistrate to obtain an arrest warrant, an arrest made pursuant to that warrant will still be constitutional if the officer had probable cause to arrest Plaintiff for a different crime. *Compare Taylor v. Meachum*, 82 F.2d 1556, 1562 (10th Cir. 1996) (Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime); *Cruz v. City of Albuquerque*, 2019 U.S. Dist. LEXIS 36475, *14-15, *24-26 (D. N.M. Mar. 6, 2019) (a police officer defendant had probable cause to arrest a defendant, because he arrested the defendant on a valid, outstanding warrant for auto burglary, even though the defendant was held in connection with, and eventually charged with, murder) *with Goad v. Town of Meeker*, 654 F. App'x 916, 922-23 (10th Cir. 2016) (holding both that Courts may look at facts outside of the warrant to establish probable cause but also that the plaintiff must show that the defendants lacked probable cause to support the charged crime against him); *Kerns v. Bader*, 663 F.3d 1173, 1187-88 (10th Cir. 2011) (probable cause requires a

substantial probability that the suspect committed the crime). Further, there is no clear consensus among the circuits as to this question. *See Arizmendi v. Gabbert*, 919 F.3d 891, 902-904; n. 42 (5th Cir. 2019) (collecting cases and holding that "an officer [cannot] deliberately or recklessly misstate or omit facts in a warrant affidavit . . . then escape liability by retroactively constructing a justification for a warrantless arrest based on a different crime," but also finding that this principle was not clearly established); *Baldwin v. Placer County*, 418 F.3d 966, 970 (9th Cir. 2005).

In light of this dispute, the Court cannot hold that Defendant Hensley's conduct was clearly established to be unlawful at the time of Plaintiff's arrest. Though it is settled that an officer may not knowingly or with reckless disregard for the truth include false statements in the affidavit, it is also settled law that this conduct will not support a claim where the remaining, appropriately-included allegations support the existence of probable cause. In the absence of clear guidance from the Tenth Circuit or a clear consensus among the circuits, a reasonable officer in Defendant Hensley's position may have believed both that this rule extended to any crime for which the appropriately-included allegations supported probable cause and to any crime for which the officer possessed probable cause, whether included in the affidavit or not. Accordingly, Plaintiff has not shown that Defendant Hensley's actions were illicit under clearly established law and Defendant Hensley is entitled to qualified immunity.

### B.     Osage County Sheriff

A county or sheriff in his official capacity cannot be held liable for constitutional violations when there was no underlying constitutional violation by any of its officers. *See Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (internal citations omitted), *see also Bame v. Iron County*, 566 F. App'x 731, 737 (10th Cir. 2014). Because the Court has found that Defendant Hensley is

entitled to qualified immunity as to Plaintiff's § 1983 claim for violation of his Fourth Amendment rights, the county or sheriff are not subject to municipal liability for the same claim.

## V. Malicious Prosecution

Plaintiff has alleged a malicious prosecution claim under § 1983 against both Defendant Hensley and Defendant Osage County Sheriff. To succeed on a § 1983 malicious prosecution claim, Plaintiff must prove (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Margheim v. Buljko*, 855 F.3d 1077, 1082 (10th Cir. 2017). Defendants both argue, *inter alia*, that Plaintiff's malicious prosecution claim fails because the underlying criminal action was not terminated in his favor.

There is no genuine dispute that the Osage County District Attorney dismissed the criminal charges against Plaintiff without prejudice. (Doc. 1, pg. 13; Osage County Case No. CF-2016-00107C.) Dismissal without prejudice is not a termination in favor of a plaintiff for purposes of malicious prosecution unless the failure to proceed implies a lack of reasonable grounds for the prosecution. *See Wilkins v. DeReyes*, 528 F.3d 790, 803 (10th Cir. 2008); *Morgan v. Ramsey*, 11-cv-451-JEC-PJC; 2013 U.S. Dist. LEXIS 31408, *16-19 (N.D. Okla. Mar. 7, 2013); *Hester v. Express Metal Fabricators, L.L.C.*, 11-cv-126-JHP-PJC, 2011 U.S. Dist. LEXIS 134432, *13 (N.D. Okla. Nov. 21, 2011). In this case, the criminal case against Plaintiff was dismissed "as it is in the best interest of justice." Osage County Case No. CF-2016-00107C. That statement alone does not state or suggest that the State lacked reasonable grounds for prosecution, and falls well short of other cases in which Courts have found dismissal with prejudice to constitute termination in a plaintiff's favor. *See Wilkins*, 528 F.3d at 803-04 (the State declining to retry the plaintiff in his underlying criminal case due to insufficient evidence constituted a favorable termination);

16

*Bryson v. Macy*, 611 F. Supp.2d 1234, 1260-61 (W.D. Okla. Apr. 30, 2009) (dismissal of criminal proceedings because "this case cannot go forward" and the "evidence developed through DNA technologies raises a doubt of the defendant's guilt which is reasonable" suggested innocence on behalf of the plaintiff). Moreover, Plaintiff has not responded to Defendants' contentions that the underlying criminal action was not terminated in Plaintiff's favor, and has provided no evidence to suggest a genuine dispute as to this fact. Accordingly, the Court finds that there is no genuine dispute of material fact that the underlying criminal action was not terminated in favor of Plaintiff. Defendants are entitled to summary judgment and Defendant Hensley is entitled to qualified immunity.

## VI. Conclusion

For the reasons set forth above, the Court finds that Plaintiff has failed to establish a genuine dispute of material fact as to either his Fourth Amendment or Malicious Prosecution claims. For these reasons, Defendants' Motions for Summary Judgment (Docs. 22 and 24) are **GRANTED**.

Plaintiffs' Opposed Motion to Supplement Evidentiary Material (Doc. 46) is **DENIED**.

Defendant Ryan Hensley's Motion in Limine (Doc. 30) is **DENIED AS MOOT**.

Plaintiff's First Motion in Limine re: Hearsay and Opinion Evidence (Doc. 32) is **DENIED AS MOOT**.

Plaintiff's Second Motion in Limine re: Character and Prior Bad Acts Evidence (Doc. 33) is **DENIED AT MOOT**.

Plaintiff's Third Motion in Limine and Request for Pre-Trial Ruling re: Conspiracy Evidence (Doc. 34) is **DENIED AS MOOT**.

Defendant Osage County Sheriff's Motion in Limine (Doc. 35) is **DENIED AS MOOT**.

Plaintiff's Motion for Sanctions (Doc. 50) is **DENIED AS MOOT**.

17

An order of judgment will be entered separately.

**SO ORDERED.**

**DATED THIS 20th day of September, 2019.**

_____
**TERENCE C. KERN**
**United States District Judge**